# Exhibit D

**DECLARATION OF J█████████ Z█████████**

I, J██████ Z███████████ *make the following statement under penalty of perjury:*

1. My name is J████ Z██████████ I am from Venezuela, and I am 19 years old. I am currently detained in Immigration and Customs Enforcement ("ICE") custody in Kenton County Detention Center in Covington, Kentucky. I have been detained since February 2025.

2. In June 2025, I applied for Special Immigrant Juvenile Status ("SIJS") after an Illinois judge found that I was abused, abandoned, or neglected by a parent in Venezuela. If I am granted SIJS, I will be eligible for a green card. But before U.S. Citizenship and Immigration Services ("USCIS") will decide my SIJS application, they told me that they need to take my "biometrics." Because I am detained by ICE, I cannot go to the biometrics appointment myself. My initial SIJS application was filed before the Department of Homeland Security created a policy saying it would not collect biometrics for people who are detained.

3. In August 2025, ICE informed me that they shared my biometrics data that they collected while I was detained with USCIS, in accordance with the policy in place at that time. But USCIS denied my application on December 1, 2025. The notice states that "USCIS considers the application abandoned" because I "did not appear" at the biometrics appointment. Ex. A.

4. I submitted a new SIJS application on January 26, 2026. I am currently waiting for a biometrics appointment notice, but I believe that my application will be denied again because DHS will not collect my biometrics while I am in detention. I also applied for asylum, withholding, and protection under the Convention Against Torture. I have my individual evidentiary hearing on the merits of my asylum application on May 11, 2026.

5. My life in Venezuela was very difficult. When I was four years old, I was diagnosed with attention deficit hyperactivity disorder ("ADHD") and prescribed a medication called risperidone. Because of this diagnosis, it was very difficult for me to receive an education, and I was abused by my father, who punished me with beatings for struggling at school.

6. My mother fled from Venezuela to the United States when I was about 12 years old. After my mother fled, I lived with my father and his girlfriend. They both beat me. When I was around 14 or 15, my father kicked me out of the house for a day after I tried to fight back. When I returned, he told me he reported me to the police and took me to the police station. My father was friends with a high-ranking police official. The officers took me to another room and yelled at me and threatened to beat me. They told me that I need to listen to my father.

7. For the next year or so, I was so scared that the police would beat me if I didn't listen to my father even though he kept beating me. Then, when I was about 16, my father and I

had an altercation, and two police officers came to the house. The police officers hit me in the head. For the next year, police officers harassed me on the street. They would constantly stop me and ask for my ID, sometimes pointing their guns at me.

8. I fled Venezuela in 2023 because I did not feel safe. I was able to reunite with my mother in Chicago, Illinois. My journey to the United States was very difficult, and I suffered a sexual assault in Mexico. Upon arriving in the United States, I suffered a psychological episode and was hospitalized for two weeks. I was prescribed risperidone again.

9. In October 2024, I went to Florida to look for work and stopped taking my medication. In November 2024, the police arrested me for fighting with a man who had assaulted me. I was detained for three months and then released in January after pleading guilty to nonviolent resisting arrest. My attorney tells me that my conviction does not disqualify me from receiving lawful permanent residence through the Special Immigrant Juvenile Status.

10. I went back to Chicago to reunite with my mother in January 2025 and reported to my ICE check-in the next month, where ICE detained me. I have been detained in ICE custody since then.

11. After my first SIJS application was denied for lack of biometrics, my attorneys helped me file a second application, because I am still eligible. I paid USCIS a $250 fee for my second application. In November 2025, a judge in Cook County, Illinois issued an order that appointed my mother as my sole guardian. In the order, the judge found my father abandoned me and that it is not in my best interests to be returned to Venezuela due to my father's abandonment and because I would be unable to access the care I need for my ADHD.

12. I am worried that my application will again be denied for reasons that are outside of my control. I want to apply for SIJS and receive a decision about my eligibility for SIJS and not just be denied because I am detained and ICE won't take me for my biometrics. A judge already said that it is in my best interests to not be deported to Venezuela, and I want to stay in the United States.

13. I am committed to participating in this case, but because of the dangers that I face in Venezuela and because much of the information relevant to my case involves my mental health history and details of my life from when I was a minor, I ask that my full name not be used in public documents.

14. I understand that I am seeking to participate in this case not just for myself but also for other noncitizens who, like me, are facing the possibility of their applications for immigration relief being denied because they are detained and cannot provide biometrics or USCIS will not accept their biometrics. I understand that representing a group like this comes with certain responsibilities to remain in contact with my attorneys, to act in a true and honest manner, and to consider the best interests not only of myself but also of the other people in this group. I agree to these responsibilities.

Thank you for considering my statement.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, memory, and belief.

Executed on the 17th day of April 2026 in ___Covington, Kentucky_____

_____████_____          4/17/2026

Nam██                                    _____

                                         Date

## CERTIFICATE OF TRANSLATION

I, ___Gerardo Romo_____, swear under penalty of perjury that I speak English and Spanish and that I have translated this document to the best of my ability. I reviewed this document with __J███████ Z██████████_____ and have incorporated any changes or corrections provided. I declare under penalty of perjury that the foregoing statement has been faithfully translated/executed to the best of my knowledge, memory, and belief.

_____          4/17/2026

NAME                                     _____

                                         Date