**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| J.Z., *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:26-cv-1510-AHA |
| United States Department of Homeland Security, *et al.*, | |
| *Defendants*. | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

ARGUMENT..............................................................................................................3

I.    The Class is sufficiently numerous that joinder of all members is
impracticable .................................................................................................3

II.    The claims raise common questions that will drive the resolution of the
case .................................................................................................................7

    A.    The rule that DHS will not take class members' biometrics
raises a common question.............................................................7

    B.    The undisputed policies prohibiting USCIS from collecting
biometrics and permitting ICE to refuse to collect them also
raise common questions..............................................................11

    C.    A claim-by-claim analysis confirms commonality...................14

    D.    The inclusion of class members ineligible for benefits does not
defeat commonality .....................................................................18

III.    Plaintiffs' claims are typical of the Class's claims.................................19

IV.    Plaintiffs are adequate class representatives..........................................22

V.    The challenged policy or policies apply generally to the Class ...........22

CONCLUSION .........................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*,
138 F.4th 1102 (9th Cir. 2025) ........................................................................................16

*Brown v. District of Columbia*,
928 F.3d 1070 (D.C. Cir. 2019) ...................................................................................24, 25

*Bynum v. District of Columbia*,
214 F.R.D. 27 (D.D.C. 2003) .............................................................................................2

*Calcutt v. Fed. Deposit Ins. Corp.*,
598 U.S. 623 (2023) .........................................................................................................14

*Clean Air Council v. Pruitt*,
862 F.3d 1 (D.C. Cir. 2017)...............................................................................................12

*Cmty. Nutrition Inst. v. Young*,
818 F.2d 943 (D.C. Cir. 1987)...........................................................................................23

*Coleman ex rel. Bunn v. District of Colombia*,
306 F.R.D. 68 (D.D.C. 2015) ..............................................................................................6

*Connecticut v. U.S. Dep't of the Interior*,
363 F. Supp. 3d 45 (D.D.C. 2019).....................................................................................20

*CropLife Am. v. EPA*,
329 F.3d 876 (D.C. Cir. 2003)............................................................................................8

*Crowe v. Fed. Bureau of Prisons*,
2025 WL 1635392 (D.D.C. June 9, 2025).......................................................................9, 16

*D.L. v. District of Columbia*,
713 F.3d 120 (D.C. Cir. 2013).........................................................................................8, 9

*D.L. v. District of Columbia*,
860 F.3d 713 (D.C. Cir. 2017).......................................................................................19, 21

*Damus v. Nielsen*,
313 F. Supp. 3d 317 (D.D.C. 2018)...................................................................................11

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ............................................................................................10

*Delagarza v. Tesoro Ref. & Mktg. Co.,*
    No. 09-cv-5803, 2011 WL 4017967 (N.D. Cal. Sept. 8, 2011)........................................11

*DHS v. Regents of the Univ. of California,*
    591 U.S. 1 (2020) ...........................................................................................................8

*Dorcas Int'l Inst. of Rhode Island v. USCIS,*
    No. 26-cv-132, 2026 WL 1622708 (D.R.I. June 5, 2026)..........................................20, 21

*Duberry v. District of Columbia,*
    924 F.3d 570 (D.C. Cir. 2019).......................................................................................23

*Escobar Molina v. DHS,*
    811 F. Supp. 3d 1 (D.D.C. 2025)............................................................................3, 22, 25

*Guaman v. Sage,*
    No. 3:26-cv-01129, 2026 WL 1471218 (M.D. Pa. May 26, 2026) ....................................5

*Gutierrez v. Noem,*
    No. 25-cv-1766, 2025 WL 3496390 (D.D.C. Dec. 5, 2025) ...........................................17

*Gutierrez v. Saenz,*
    606 U.S. 305 (2025) ......................................................................................................24

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
    851 F. Supp. 2d 1040 (S.D. Tex. 2012)..........................................................................15

*Huashan Zhang v. USCIS,*
    344 F. Supp. 3d 32 (D.D.C. 2018), *aff'd,* 978 F.3d 1314 (D.C. Cir. 2020)........................6

*INS v. St. Cyr,*
    533 U.S. 289 (2001) ......................................................................................................18

*J.D. v. Azar,*
    925 F.3d 1291 (D.C. Cir. 2019)..........................2, 5, 7, 8, 9, 12, 13, 15, 17, 19, 21, 22, 25

*Jibril v. Mayorkas,*
    20 F.4th 804 (D.C. Cir. 2021)........................................................................................10

*Jimenez v. Nielsen,*
    334 F. Supp. 3d 370 (D. Mass. 2018).............................................................................18

*Ky. Dept. of Corr. v. Thompson,*
    490 U.S. 454 (1989) ......................................................................................................17

*L.G.M.L. v. Noem*,
    800 F. Supp. 3d 100 (D.D.C. 2025).................................................................................6, 9

*L.M.-M. v. Cuccinelli*,
    442 F. Supp. 3d 1 (D.D.C. 2020)......................................................................................21

*Mahmoud v. Taylor*,
    606 U.S. 522 (2025) .........................................................................................................10

*Mendoza Aranguen v. Olson,*
    No. 26-cv-5889, 2026 WL 1662133 (N.D. Ill. June 9, 2026) .............................................4

*Mohsin v. Warden,*
    No. 1:26-cv-03459, 2026 WL 1506839 (E.D. Cal. May 29, 2026).....................................4

*Morgan v. District of Columbia,*
    No. 10-cv-1511, 2025 WL 2255228 (D.D.C. Aug. 7, 2025)...............................................11

*N.S. v. Hughes*,
    335 F.R.D. 337 (D.D.C. 2020) .........................................................................................21

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*,
    145 F.3d 1399 (D.C. Cir. 1998).........................................................................................8

*Nio v. DHS*,
    323 F.R.D. 28 (2017).......................................................................................................17

*NTCH, Inc. v. FCC*,
    841 F.3d 497 (D.C. Cir. 2016)..........................................................................................24

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019)...............................................................................9, 13

*Ohio v. EPA*,
    603 U.S. 279 (2024) ...................................................................................................16, 19

*Olivier v. City of Brandon*,
    607 U.S. 552 (2026) .........................................................................................................10

*Orangeburg v. FERC*,
    862 F.3d 1071 (D.C. Cir. 2017)........................................................................................13

*Pappas v. District of Columbia,*
    No. 19-cv-2800, 2024 WL 1111298 (D.D.C. Mar. 14, 2024)...........................................15

*Portillo Vasquez v. Turek,*
  No. 2:25-cv-741, 2025 WL 2733631 (D. Vt. Sept. 25, 2025)............................................4

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin,*
  174 F.4th 81 (D.C. Cir. 2026)................................................................5, 9, 13, 15, 18

*Research & Action Ctr., v. FCC,*
  750 F.2d 70 (D.C. Cir. 1984)....................................................................................16

*S.N.C. v. Sessions,*
  No. 18-cv-7680, 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018) .......................................18

*Saghafi v. Edlow,*
  No. 26-cv-100, 2026 WL 1127468 (D. Md. Apr. 24, 2026) ............................................21

*SEC v. Chenery Corp.,*
  318 U.S. 80 (1943) ....................................................................................................8

*Sierra Club v. U.S. Dep't of Transp.,*
  125 F.4th 1170 (D.C. Cir. 2025)....................................................................................13

*Sonora-Abrajan v. Bondi,*
  No. 25-cv-2090, 2026 WL 1354207 (W.D. La. Apr. 8, 2026)....................................5, 18

*Thorpe v. District of Columbia,*
  303 F.R.D. 120 (D.D.C. 2014) ....................................................................................20

*United States ex rel. Accardi v. Shaughnessy,*
  347 U.S. 260 (1954) ..................................................................................................17

*Venetian Casino Resort, LLC v. EEOC,*
  530 F.3d 925 (D.C. Cir. 2008)....................................................................................12

*Vu v. Lyons,*
  No. 5:26-cv-02930, 2026 WL 1722908 (C.D. Cal. June 11, 2026) ...................................4

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ........................................................................2, 7, 8, 15, 16, 23, 25

*Walter A. v. Easterwood,*
  No. 26-cv-1393, 2026 WL 836428 (D. Minn. Mar. 26, 2026)...........................................5

*Women's Equity Action League v. Cavazos,*
  879 F.2d 880 (D.C. Cir. 1989)....................................................................................23

*Zelada-Garnica v. Mullin,*
   No. 5:26-cv-02942, 2026 WL 1700478 (C.D. Cal. June 8, 2026) ....................................4

**FEDERAL STATUTES**

5 U.S.C. § 551 ...............................................................................................................1, 7, 8

5 U.S.C. § 553 .....................................................................................................................16

5 U.S.C. § 702 .......................................................................................................................8

5 U.S.C. § 706 .....................................................................................................................16

8 U.S.C. § 1182 ...................................................................................................................21

**FEDERAL CIVIL RULES**

Fed. R. Civ. P. 23.............................................................................................................2, 3, 7

**FEDERAL REGULATIONS**

8 C.F.R. § 1003.47........................................................................................................15, 19, 24

**OTHER AUTHORITIES**

*Accept*, Sense 1.a., Oxford English Dictionary,
   https://doi.org/10.1093/OED/9274392877(accessed June 16, 2026) ..................................6

Newberg & Rubenstein on Class Actions (6th ed. 2025).................................6, 7, 9, 12, 17, 19, 20

*Take*, Merriam-Webster.com Dictionary, https://www.merriam-
   webster.com/dictionary/take (accessed June 16, 2026).........................................................6

USCIS, Policy Alert, PA-2025-29, *Photograph Reuse for Identity Documents* (Dec.
   12, 2025), https://perma.cc/MC8V-T9JA...........................................................................11

USCIS, *Policy Manual*, vol. 1, pt. C, Ch. 1, https://perma.cc/TJ83-Q647...................................11

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.) ..................................................9

**INTRODUCTION**

The government's opposition to class certification rests on the same mantra as its opposition to preliminary relief: The Court should ignore DHS's announcement that "the Department of Homeland Security generally will not take biometrics of detained [noncitizens]" with applications before USCIS, Dkt. No. 14-2 ("Release"), and focus only on USCIS's changes to its Policy Manual. *See* Opposition to Class Certification ("Opp'n") 1, 7–8, Dkt. No. 33. According to Defendants, the discrete changes to the Policy Manual do not harm anyone or raise any class-wide problems because they do not "preclude" DHS from collecting class members' biometrics. *Id.* at 1. They just leave that biometrics decision—and thus the fate of each class member's application for relief from USCIS—to whichever ICE agent it falls upon that day.

None of this eliminates the need for preliminary relief, and it does not defeat class certification. DHS's statement in the Release constitutes a reviewable "rule" under the APA, 5 U.S.C. § 551(4), regardless of whether DHS follows it in every case. But even if one ignores that rule, the record reflects that DHS has two policies that harm the Class: (1) "USCIS does not collect biometrics from . . . persons who are detained or incarcerated in any DHS or non-DHS detention facilities" and (2) ICE is no longer required to collect detained people's biometrics for applications pending with USCIS. Opp'n 7–8. Both of these policies violate the APA, federal regulations, and due process. *See* Reply in Supp. of Mot. for Stay and Prelim. Inj. ("Stay & PI Reply") 7–8, 16–25, Dkt. No. 24. And both warrant class certification under Rule 23(b)(2).

Whether the policy prohibits DHS from collecting class members' biometrics or simply permits the agency to refuse to do so, it applies to the Class as a whole and raises common issues central to the litigation. "When a challenged policy is generally applicable to the class," the court may certify the class "'even if [the policy] has taken effect or is threatened only as to one or a few

1

members of the class.'" *J.D. v. Azar*, 925 F.3d 1291, 1315 (D.C. Cir. 2019) (quoting Note of Advisory Committee on 1966 Amendment, Fed. R. Civ. P. 23). Because the relevant policy provisions all "apply generally" (*id.*) to the class—"persons who are detained . . . and have a pending immigration petition or application with USCIS" for which USCIS has not accepted biometrics, Policy Alert 2, Dkt. No. 14-3—a decision on their legality "will resolve an issue that is central to the validity of each one of the claims in one stroke," *J.D.*, 925 F.3d at 1315 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The Class is also sufficiently numerous that joinder is "impracticable." Fed. R. Civ. P. 23(a)(1). Although only the government knows how many detained people still need their biometrics taken for USCIS applications, the public numbers indicate the Class exceeds the low threshold for numerosity: Over one hundred thousand noncitizens file relevant applications each quarter, and tens of thousands of noncitizens are in DHS detention. This provides enough data to make "common sense assumptions to support a finding of numerosity." *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003). Even if there were any doubt, though, "non-numerical considerations" would dispel it: The inclusion of "future claimants," the "fluidity" of DHS "custody," and the difficulties detained people face in bringing individual lawsuits confirm that joining all class members would be impracticable. *J.D.*, 925 F.3d at 1323.

Plaintiffs are also typical and adequate class representatives. Plaintiffs have standing. *See* Stay & PI Reply 5–9. Their claims arise from the same "single event" that threatens the Class— the issuance of the Biometrics Policy—and their challenges to the relevant policies "are based on the same legal or remedial theor[ies]" that are available to the Class. *J.D.*, 925 F.3d at 1322. The government identifies no conflict of interest between the Plaintiffs and the Class and does not dispute that Plaintiffs' counsel are qualified to represent the Class. And because the challenged

2

rules "apply generally" to the Class, *id*. at 1315, "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2).

The Court should grant the motion for class certification or, at minimum, provisionally certify the Class for the purposes of a stay and preliminary injunction.

## ARGUMENT

## I.    The Class is sufficiently numerous that joinder of all members is impracticable

The Class is numerous enough that joining all members is impracticable. The government does not dispute that millions of applications for immigration benefits are pending with USCIS, and there are at least 60,000 noncitizens in immigration detention. *See* Opp'n 17; Gov't Ex. 11, Dkt. No. 33-2. The Class is sufficiently large if only forty of those detained people—0.06% of the detained population—need biometrics for pending USCIS applications. *See Escobar Molina v. DHS*, 811 F. Supp. 3d 1, 57 (D.D.C. 2025) (class "of at least forty members" satisfies numerosity).

The evidence supports a commonsense inference that the Class comprises more than forty members. In only three months from June 1 to September 30, 2025, USCIS received more than 150,000 potentially relevant applications: more than 124,000 applications for family-based adjustment of status, more than 4,000 for Cuban adjustment, 15,836 for T visas, 7,450 for U visas, and 4,782 for asylee relative status.[1] Gov't Ex. 11, Dkt. No. 33-2. The numbers were comparable from October 1 to December 31, 2025, the most recent data available: USCIS received more than 103,000 applications for family-based adjustment, almost 25,000 for Cuban adjustment, more than 10,000 for T visas, nearly 8,000 for U visas, and more than 4,000 for asylee relative status. Ex. D, USCIS, Q1 2026 Quarterly Data. The Court can thus fairly infer that comparable numbers of

---

[1] T visas, U visas, and asylee relative petitions filed with USCIS are in USCIS's exclusive jurisdiction. Although some family-based adjustment applications could be renewed or refiled in immigration court, many lie within USCIS's exclusive jurisdiction. *See* Stay & PI Mem. 3–4.

applications were likely filed in the next six months. And given DHS's aggressive arrest campaign

and instructions to detain all removable noncitizens, Compl. ¶¶ 54–60, at least hundreds of

applicants are likely detained. Indeed, ICE has often used biometrics appointments to arrest people

at USCIS offices before they can submit biometrics.[2] Even if USCIS received fingerprint cards for

77 detained applicants from March 1 through June 10, 2026, as the government claims (Opp'n 18),

over forty detained applicants likely remain in the Class.

Reinforcing that inference, ample record evidence indicates that DHS regularly fails to take

biometrics of detained people for applications before USCIS. The December 5 Press Release states

that DHS generally does not do so. Release, Dkt. No. 14-2. ICE has not taken most of the Plaintiffs'

biometrics, and even when it has, it has either not sent them to USCIS for purposes of their benefits

applications, or USCIS has rejected them. *See* J.Z. Decl. ¶¶ 3, 12, Dkt. No. 14-5; R.M. Decl. ¶¶ 2,

9, Dkt. No. 14-6; Estrada Trejo Decl. ¶¶ 5–7, Dkt. No. 14-7; Y.P. Decl. ¶ 6, Dkt. No. 14-8; H.A.

Decl. ¶ 6, Dkt. No. 14-9; M.C. Decl. ¶¶ 9–10, Dkt. No, 14-10. The public record teems with other

cases in which DHS has not taken detained people's biometrics for applications pending with

USCIS. *See* Stay & PI Reply 3–4. Just last week, a court found that a DHS officer told counsel for

a detained adjustment-of-status applicant that "USCIS will not accept biometrics from persons

who are in detention unless it is for the purpose of a benefit filed with EOIR." *Vu v. Lyons*, No.

5:26-cv-02930, 2026 WL 1722908, at *4 (C.D. Cal. June 11, 2026); *see also* Hurst Decl. ¶¶ 13,

---

[2] *See Portillo Vasquez v. Turek*, No. 2:25-cv-741, 2025 WL 2733631, at *2, 4–5 (D. Vt. Sept. 25, 2025) ("When Petitioner arrived at her biometrics appointment to be fingerprinted, [ICE] agents arrested and detained her."); *see also Mendoza Aranguen v. Olson*, No. 26-cv-5889, 2026 WL 1662133, at *1 (N.D. Ill. June 9, 2026) (same); *Zelada-Garnica v. Mullin*, No. 5:26-cv-02942, 2026 WL 1700478, at *1 (C.D. Cal. June 8, 2026) (same); *Mohsin v. Warden*, No. 1:26-cv-03459, 2026 WL 1506839, at *1 (E.D. Cal. May 29, 2026) (same).

22, Dkt. No. 24-1 (ICE official said that ICE does not "assist" people in obtaining "benefits" from USCIS and ICE would not transport client to biometrics appointment). Other examples abound.[3]

Moreover, DHS has the data that could confirm the Class's size. If that data showed that the Class comprised fewer than forty members, the government would have produced it.

Even if the Class included fewer than forty people, the non-numerical factors—the "fluidity of [DHS] custody, the dispersion of class members across the country, and their limited resources," *J.D.*, 925 F.3d at 1323—show that joinder is impracticable. Mem. in Supp. of Class Cert. 7–8, Dkt. No. 20-1. The government does not meaningfully contest this point. Its only response, in a footnote, is to claim it is "speculative" to conclude that more detained people will file applications for which DHS will not take biometrics. Opp'n 18 n.6. But given the number of new applications filed every three months and the number of noncitizens being detained, the prospect that more detained people will need biometrics for USCIS applications is hardly speculative.[4]

The government last claims that it is "impossible" to estimate the Class size because "Plaintiffs do not define what it means [for USCIS] to 'not accept' biometrics." Opp'n 18. But the term "accept" requires no special definition; it carries its ordinary meaning: "To take or receive

---

[3] *See*, *e.g.*, *Guaman v. Sage*, No. 3:26-cv-01129, 2026 WL 1471218, at *2 (M.D. Pa. May 26, 2026) (USCIS denied detained person's SIJS petition because he could not submit biometrics while in detention); *Sonora-Abrajan v. Bondi*, No. 25-cv-2090, 2026 WL 1354207, at *7 (W.D. La. Apr. 8, 2026) (holding ICE violated detained T visa applicant's due process rights because it did not allow her to attend biometrics appointment), *report and recommendation adopted*, No. 3:25-cv-02090, 2026 WL 1353507 (W.D. La. May 14, 2026); *see also* Am. Compl. ¶ 38, *Cantillo Montero v. Edlow*, No. 1:26-cv-00583 (D.N.M. Mar. 26, 2026), Dkt. No. 3 ("ICE refused to transport [detained adjustment applicant] to her previously scheduled biometrics appointment" and "provided no mechanism for collecting biometrics while she remain[ed] in custody"); *Walter A. v. Easterwood*, No. 26-cv-1393, 2026 WL 836428 (D. Minn. Mar. 26, 2026) (DHS refused to collect detained person's biometrics until district court ordered it).

[4] The government argues that a class cannot contain future members, but it acknowledges that the D.C. Circuit has rejected that position. Opp'n 18 n.6; *see Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81, 114–17 (D.C. Cir. 2026) ("*RAICES*").

(something offered) willingly." *Accept*, Sense 1.a., Oxford English Dictionary, https://doi.org/10.1093/OED/9274392877 (accessed June 16, 2026). So defined, the Class definition accounts for the ways that DHS does not "take" detained applicants' biometrics for USCIS applications. Release, Dkt. No. 14-2; *Take*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/take (accessed June 16, 2026) (defining "take" to mean both "to obtain" and "to accept the tender of"). In many cases, ICE has not collected detained noncitizen's biometrics. *See supra* 4–5 & n.3. In others, while ICE may have collected the biometrics, USCIS either did not receive them or did not accept them for processing. *See*, *e.g.*, M.C. Decl. ¶ 10, Dkt. No, 14-10 (ICE took fingerprints but USCIS had no record of them); J.Z. Decl. ¶ 3, Dkt. No. 14-5 (USCIS denied application for lack of biometrics even though ICE collected them). In both these circumstances, USCIS will not have "accepted" the biometrics because it has either not received them or has rejected them, "such that [the class members] are unable to pursue an application for relief." Opp'n 18 n.6. The Class is thus "based on objective criteria that can be easily determined." *Huashan Zhang v. USCIS*, 344 F. Supp. 3d 32, 61 (D.D.C. 2018), *aff'd*, 978 F.3d 1314 (D.C. Cir. 2020). No more is needed to estimate numerosity.

Even when numerosity is a "close call," which is not the case here, "courts err in favor of certification because a court always has the option to decertify the class if it is later found that the class does not in fact meet the numerosity requirement." *Coleman ex rel. Bunn v. District of Colombia*, 306 F.R.D. 68, 80 (D.D.C. 2015); *accord* Newberg & Rubenstein on Class Actions § 3:12 (6th ed. 2025) ("Newberg"). That approach is especially appropriate in cases like this one, where the plaintiffs request provisional certification for the purposes of preliminary relief, and defendants likely possess, but have not produced, discoverable information that could confirm the size of the Class. *See L.G.M.L. v. Noem*, 800 F. Supp. 3d 100, 117 (D.D.C. 2025) (provisional

certification contemplates that "certification[ ] may be altered or amended before the decision on the merits"). Numerosity is satisfied.

## II.    The claims raise common questions that will drive the resolution of the case

### A.  The rule that DHS will not take class members' biometrics raises a common question

Plaintiffs' claims also raise at least one common question because they all stem from the same rule: "the Department of Homeland Security generally will not take biometrics of detained [noncitizens] unless they are in removal proceedings and have a pending application or petition filed with" the immigration courts, as opposed to USCIS. Release 1, Dkt. No. 14-2. A "general policy" applicable to the whole class is enough to show commonality. *Wal-Mart*, 564 U.S. at 353. This remains true "even if [the policy] has taken effect or is threatened only as to one or a few members of the class." *J.D.*, 925 F.3d at 1315 (quoting Note of Advisory Committee on 1966 Amendment, Fed. R. Civ. P. 23). As the leading class action treatise confirms, "[a] claim that the defendant 'has acted or refused to act on grounds that apply generally to the class' necessarily presents a common question of fact." Newberg § 3:27 (quoting Fed. R. Civ. P. 23(b)(2)). At the class certification stage, plaintiffs need only offer "significant proof" that such a policy exists. *Wal-Mart*, 564 U.S. at 353.

The plain statement in the Release is not just "significant proof" that DHS maintains the rule it describes, *Wal-Mart*, 564 U.S. at 353; the statement *is* the rule that is subject to APA review. Under the APA, a "rule" is "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). The Release satisfies that requirement: It is a statement by DHS that describes DHS policy. *See* Release 1, Dkt. No. 14-2; Stay & PI Reply 2–4. It is therefore an "agency action" under the APA,

5 U.S.C. § 551(13), and it is final and reviewable. *See* Stay & PI Reply 7–8, 10; *CropLife Am. v. EPA*, 329 F.3d 876, 878-79 (D.C. Cir. 2003) (statement in press release was reviewable rule).

The rule is also "generally applicable" to the Class. *J.D.*, 925 F.3d at 1315. The Release indicates that DHS will not take biometrics for detained people with applications before USCIS, *See* Release 1, Dkt. No. 14-2, and the Class includes only detained people with applications before USCIS whose biometrics have not been accepted. Mot. 1, Dkt. No. 20. Every member of the Class is therefore subject to the rule. And if Plaintiffs prevail, the rule will "be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360.

Most importantly, Plaintiffs' claims turn on the rule itself—not how it applies to any individual. The APA claims ask whether the rule is "arbitrary" or "capricious," or contrary to law, and whether the court should "hold [it] unlawful" and "set [it] aside," 5 U.S.C. § 702(2)(A); *see SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) (APA review turns on the "grounds upon which the agency acted"); *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 20–21 (2020) (same). If the rule is set aside, DHS cannot apply it to any class member; it must abide by the prior policy and take the biometrics of all detained noncitizens with applications before USCIS. *See Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) ("[W]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."). The Court's decision on the APA claims will thus "resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *Wal–Mart*, 564 U.S. at 350.

Contrary to the government's suggestion, the rule also "affects each class member" because it exposes them all to a common injury. *D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013). All members of the Class now face the substantial risk that that DHS will not take their

8

biometrics for their applications for relief from USCIS, foreclosing a decision on the merits and subjecting them to deportation with no chance to pursue the relief they seek. When a rule exposes all class members to such a common injury, commonality is satisfied. *See Crowe v. Fed. Bureau of Prisons*, No. 24-cv-3582, 2025 WL 1635392, at *20 (D.D.C. June 9, 2025) ("'Because the [regulation] exposes all putative class members . . . to the same [alleged] deprivation of their statutory right," "the proposed class satisfies Rule 23(a)'s requirements of commonality and typicality.") (quoting *O.A. v. Trump*, 404 F. Supp. 3d 109, 156 (D.D.C. 2019)). And the requested relief "respond[s], at least in part," to that "common harm." *D.L.*, 713 F.3d at 128. If the Court sets the rule aside, it will restore the prior policy that required ICE to take all class members' biometrics. *See* Mem. in Supp. of Stay and Prelim. Inj. 41, Dkt. No. 14-1 ("Stay & PI Mem."); Policy Manual 4 (eff. Nov. 27, 2025), Dkt. No. 14-4; Policy Alert 1, Dkt. No. 14-3.

The government suggests that the rule does not present a common question because DHS does not always apply it in practice, so it does not harm or threaten "imminent" harm to every class member. Opp'n 21. That is wrong on both the law and the facts. First, as the D.C. Circuit recently confirmed, a policy need not injure or even threaten "imminent injuries" to every class member to warrant Rule 23(b)(2) class certification. *RAICES*, 174 F.4th at 114. Instead, "courts may award class-wide injunctive or declaratory relief under Rule 23(b)(2) so long as one member of the class has standing." *Id.* As long as the policy is "generally applicable" to the class, "all the class members need not be aggrieved by" it "for some of them to seek relief under Rule 23(b)(2)." *J.D.*, 925 F.3d at 1315–16 (citation omitted); *accord L.G.M.L.*, 800 F. Supp. 3d at 122; Newberg § 4:28; Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.).[5]

---

[5] *Wal-Mart*'s statement that all class members must "have suffered the same injury" does not require a general policy to threaten actual or imminent harm to every class member to justify class certification under Rule 23(b)(2). 564 U.S. at 348. The Court directed that statement to claims

Second, the rule does threaten imminent injury to each class member. When a government policy instructs its employees to do something harmful, the people subject to the policy generally need not "wait and see" how agents apply it to them before they have standing to challenge the policy. *Mahmoud v. Taylor*, 606 U.S. 522, 560 (2025). The Court need only find that the plaintiff will be injured if the defendant's agents act according to the policy's instructions. *See id.* (holding that where school board policy instructed teachers to teach certain books, the court did not need to wait to see "how a particular book [was] used in a particular classroom"; it only had to decide whether parents would suffer a religious injury "if teachers act[ed] in accordance with" the "instructions of the Board"). And here, the record shows that DHS follows the rule in practice. *See supra* 4–5; Stay & PI Reply 2–4. This all shows at least a "substantial risk" that DHS will not collect any given class member's biometrics, a risk sufficient for standing. *Mahmoud*, 606 U.S. at 560; *see Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021) ("[A]n alleged future injury may suffice to establish standing if . . . there is a 'substantial risk' it will occur.").

The government's new claim that ICE sent USCIS fingerprints for 77 detained applicants—across the entire country—in the span of over three months (from March 1 to June 10) does not show otherwise. As the government does not dispute, biometrics include more than just fingerprints: Applicants must submit photographs and signatures. *See* Stay & PI Reply 4;

---

for "monetary relief" based on alleged past injuries, *id.* at 360–61, and it must be read in that context. *See Olivier v. City of Brandon*, 607 U.S. 552, 565 (2026) ("[G]eneral language in judicial opinions should be read as referring in context to circumstances similar to [those] then before the Court."). On its face, the Court's remark does not apply to prospective relief: No one suggests that class members must "*have suffered* [an] injury" to obtain prospective relief against an imminent injury that has not come to pass. And even in damages cases, courts have read the statement to require only proof of "an instance of injurious conduct" that generally applies to the class, such as "a companywide discriminatory pay and promotion policy," not an actual or imminent harm to each class member. *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) (emphasis added) (rejecting suggestion that "either the diversity of the class members' economic injuries or the inclusion of members who 'have suffered no injury at all' might preclude class certification").

USCIS, *Policy Manual*, vol. 1, pt. C, Ch. 1, https://perma.cc/TJ83-Q647 (biometrics "include fingerprints, photographs, and digital signatures"); USCIS, Policy Alert, PA-2025-29, *Photograph Reuse for Identity Documents* 1 (Dec. 12, 2025), https://perma.cc/MC8V-T9JA (new adjustment-of-status applications "require the collection of new biometrics, including a new photograph"). The government's declaration does not identify any case in which ICE has taken that data and sent it to USCIS for an application within USCIS's jurisdiction. *See* Gov't Ex. 11, Dkt. No. 33-1.

In any event, that DHS has taken biometrics in a few dozen cases does not erase the challenged rule or negate the common questions it raises. *See supra* 7–8. Indeed, even in challenges to unwritten policies and practices—as opposed to a written rule reviewable as such under the APA—when a plaintiff offers significant proof that a general policy exists, the defendant's occasional deviations from that general policy do not defeat commonality. *See Damus v. Nielsen*, 313 F. Supp. 3d 317, 333 (D.D.C. 2018) (holding that evidence of general policy of denying release to asylum seekers established commonality even though "a small percentage of asylum-seekers were, in fact, released"); *Morgan v. District of Columbia*, No. 10-cv-1511, 2025 WL 2255228, at *5 (D.D.C. Aug. 7, 2025) (certifying class of Medicaid beneficiaries who did not receive notice of coverage denials, even though defendant issued new policy that required pharmacies to provide such notices, because many pharmacies still did not provide the required notices); *Delagarza v. Tesoro Ref. & Mktg. Co.*, No. 09-cv-5803, 2011 WL 4017967, at *6 (N.D. Cal. Sept. 8, 2011) ("[T]hat some workers can leave the premises with permission does not negate Plaintiffs' assertion that there is a general default policy against leaving the premises.").

## B. The undisputed policies prohibiting USCIS from collecting biometrics and permitting ICE to refuse to collect them also raise common questions

Even if DHS policy did not generally prohibit biometrics collections for detained noncitizens' USCIS applications, this case would still present common questions.

The government does not dispute that DHS has at least two policies. First, "USCIS employees will not go into detention facilities to collect biometrics concerning applications for benefits within USCIS's jurisdiction." Opp'n 19. More precisely, the policy "[p]rovides that USCIS does not collect biometrics from" noncitizens "who are detained . . . in any jail, prison, or similar DHS or non-DHS detention facilities and have a pending immigration petition or application with USCIS." Policy Alert 2, Dkt. No. 14-3. Second, ICE is no longer required to take detained individuals' biometrics. *Id.* at 1–2. [6] As explained previously, both of these provisions are final agency actions reviewable under the APA. *See* Stay & PI Reply 7–8. This holds true even if ICE may still occasionally collect biometrics at detention centers and send them to USCIS for processing: A policy that takes away an obligation, or permits agency staff to do something, is a final agency action. *See Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 931 (D.C. Cir. 2008) ("policy of *permitting* employees to disclose confidential information without notice" was final agency action (emphasis added)); *see also Clean Air Council v. Pruitt*, 862 F.3d 1, 6–7 (D.C. Cir. 2017) (holding that order "revoking" or "delaying" the effect of a rule was final action, and that the stay of a rule was final because it temporarily removed obligations).

Like the Release, both of these policies raise common questions because both are "generally applicable" to the Class. *J.D.*, 925 F.3d at 1315; *accord* Newberg § 3:27. The first

---

[6] For the first time in a footnote to its opposition to class certification, the government now argues that plaintiffs cannot prove a "rescission" of the intradepartmental agreement that required ICE to collect biometrics for detained applicants. Opp'n 20 n.7; *but see* Opp'n to Stay and Prelim. Inj. 36, Dkt. No. 17 (referring to the "rescission of the prior 'intradepartmental agreement' between USCIS and ICE referred to in the prior section of the Policy Manual"). The government has forfeited that argument for the purposes of the motion for preliminary relief, and it fails in any event: The documents reflect that such an agreement existed for at least five years, and now it is gone. *See* Stay & PI Mem. 35. Tellingly, the government does not actually deny that DHS rescinded that agreement. *See* Opp'n 20 n.7. And it does not suggest that the prior agreement had an expiration date. *See id.* But if the government really intends to dispute whether DHS rescinded the agreement or otherwise repealed the relevant requirement, that is another common question.

12

provision prohibits USCIS from collecting any class member's biometrics for their USCIS applications, and the second permits ICE to refuse to collect them. Policy Alert, Dkt. No. 14-3. Both "expose" all class members to the same injury—that DHS will not take their biometrics, foreclosing a decision on the merits of their applications and subjecting them to removal with no chance for relief. *O.A.*, 404 F. Supp. 3d at 156. Again, whether that injury is "imminent" for every class member is beside the point. *RAICES*, 174 F.4th at 114; *accord J.D.*, 925 F.3d at 1315. And even if each class member needed standing, the substantially "increased risk" that DHS will not collect their biometrics now that its policies permit DHS to refuse "suffices to demonstrate" class members' "standing." *Sierra Club v. U.S. Dep't of Transp.*, 125 F.4th 1170, 1182 (D.C. Cir. 2025).

The government argues that the challenged provisions do not give rise to common questions because they may not be "the cause of any failure by USCIS to accept biometrics." Opp'n 20. In other words, it suggests, perhaps DHS might simply fail to collect some applicants' biometrics due to neglect, rather than because of a policy. But since not every class member needs standing, *RAICES*, 174 F.4th at 114, Plaintiffs need not show that the challenged policies will "cause" each class member's injury, Opp'n 20. And even if Plaintiffs had to make that showing, the bar is not so high. A party shows causation if it is "substantially probable" that the challenged action "will cause" him an injury. *Orangeburg v. FERC*, 862 F.3d 1071, 1080 (D.C. Cir. 2017). That requirement "is met when a plaintiff demonstrates that the challenged agency action authorizes the conduct that allegedly caused the plaintiff's injuries . . . ." *Id.* Because the challenged policies authorize ICE agents to refuse to collect class members' biometrics, and require USCIS to refuse to collect their biometrics, all class members have standing to challenge those policies.[7]

---

[7] The fact that these provisions leave ICE with discretion to take or refuse to take class members' biometrics does not defeat commonality. In *Wal-Mart*, unlike in this case, the company's delegation of discretion to individual managers did not pose a common question

## C.  A claim-by-claim analysis confirms commonality

A claim-by-claim analysis confirms that the policies raise common questions. To determine whether the provisions are contrary to law (Count I), the Court must determine whether DHS may lawfully refuse to take biometrics needed to pursue USCIS applications. *See* Stay and PI Reply 16; Opp'n to Stay and Prelim. Inj. 28–31, Dkt. No. 17. As the government admits, the policies at issue rest on DHS's legal conclusion that it need not do so. *See* Opp'n to Stay and Prelim. Inj. 17 (admitting that the policy documents reflect "USCIS's view of DHS's obligations regarding the collection of biometrics as set forth in existing regulations"); Policy Alert 2, Dkt. No. 14-3 ("DHS has no obligation to collect biometrics from aliens in detention, unless they are in removal proceedings and have an application or petition in front of" EOIR). But if Plaintiffs are correct that DHS's refusal to take detained applicants' biometrics violates the Immigration and Nationality Act and DHS regulations, then the challenged provisions violate the APA. *See* Stay & PI Mem. 16–28; *see Calcutt v. Fed. Deposit Ins. Corp.*, 598 U.S. 623, 629 (2023) ("[T]he function of the reviewing court ends when an [agency's] error of law is laid bare."). A decision that DHS cannot refuse to take applicants' biometrics would thus "resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Wal–Mart*, 564 U.S. at 350.

The government argues that the contrary-to-law claim raises no common question because different regulations govern the merits of class members' applications for immigration relief.

---

"central to the validity" of the class members' claims because a Title VII claim requires proof of "discrimination," and a policy that simply allows managers to exercise discretion "raise[s] no inference of discriminatory conduct." 564 U.S. at 355 (citation omitted). The general delegation itself could not violate Title VII, so, to prevail, the plaintiffs had to show that each individual manager's decision was discriminatory. *See id.* Here, in contrast, Plaintiffs argue that the challenged provisions violate the APA on their face. To resolve that claim, the court need not assess how or "why" any individual agent exercises their discretion, Opp'n 20; it need only decide whether the provisions themselves are arbitrary or capricious or contrary to law.

14

Opp'n 23–24. But the fact that different laws govern class members' claims does not defeat commonality if the governing rules are materially similar, such that the plaintiffs' success turns on a similar legal theory. *See* Mem. in Supp. of Class. Cert. 7–8, Dkt. No. 20-1; *RAICES*, 174 F.4th at 113–14 (affirming certification of class that included applicants for asylum, withholding of removal under the INA, and withholding under the Convention Against Torture); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012) (certifying class "[d]espite possible state-by-state variations in the elements of these claims" because the claims "ar[o]se from a single course of conduct . . . and a single set of legal theories"). And here, each regulatory scheme uses similar language to give applicants a right to an individualized adjudication on the merits. *See* Stay & PI Mem. 15–25.

The government does not identify any material differences among the regulatory schemes that govern Plaintiffs' applications. True, many of the forms of relief are within DHS's discretion. Opp'n 24. But that does not affect the core theories behind Plaintiffs' contrary-to-law claim: Regardless of whether DHS has the discretion to deny relief, it cannot refuse to consider the application's merits or block the applicant from pursuing it. Stay & PI Mem. 16–28; Stay & PI Reply 17–18. And it must comply with the specific regulation that requires DHS to collect biometrics for "any" detained applicant for "any" application for immigration relief that requires a background or security check. 8 C.F.R. § 1003.47(a), (d). Further, although the government makes certain jurisdictional arguments for some class members, that does not mean their APA claims lack even a "single" question in common with the rest of the class. *J.D.*, 925 F.3d at 1321; *see Pappas v. District of Columbia*, No. 19-cv-2800, 2024 WL 1111298, at *5 (D.D.C. Mar. 14, 2024) ("[T]here must be an important *issue* that can be resolved in 'one stroke,' but the overall *claim* itself need not be resolved in one stroke." (quoting *Wal-Mart*, 564 U.S. at 350)). Regardless

15

of these alleged differences, at least one question "central to the validity" of the contrary-to-law claim remains "capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350.

Counts II and IV also turn on the merits of the policies themselves, rather than their applications to any individual person. For Count II ("Arbitrary and Capricious"), the Court must determine whether the challenged provisions are "reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024); *see* Compl. ¶ 121. And for Count IV, the Court must decide whether 5 U.S.C. § 553 required DHS to promulgate the relevant provisions through the notice and comment process. *Id.* ¶¶ 131–33. As explained above, the answer to both of those questions is the same regardless of which class member asks them. *See supra* 8.

For Count III ("Agency Action Unlawfully Withheld"), the Court must decide whether DHS may lawfully withhold biometrics collections for detained noncitizens with USCIS applications. *See* Compl. ¶¶ 123–27; 5 U.S.C. § 706(1). The government claims that Count III does not involve a common question because the Court must apply the fact-specific "*TRAC*" factors to determine whether each class member's adjudication was unreasonably delayed. Opp'n 22. But the TRAC factors do not apply to claims that an agency has unlawfully withheld required action. *See Telecomms. Research & Action Ctr., v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC") (establishing factors that govern "claims of unreasonable delay"); *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1122 (9th Cir. 2025) (TRAC factors do not apply when agency "withholds action entirely"), *cert. granted*, 146 S. Ct. 604 (2025). Here, Plaintiffs do not challenge a mere delay in collecting biometrics; they challenge the outright refusal to collect those biometrics. The cases the government cites—in which courts applied the *TRAC* factors when an agency delayed action beyond a statutory deadline—are therefore inapposite. Opp'n 22–23 (citing, *e.g.*, *Crowe*, 2025 WL 1635392, at *17).  And even if this were a claim of unreasonable delay, that

16

would not defeat certification: "[C]ourts routinely certify classes in unreasonable-delay cases where a common issue exists regarding the legality of the government's policies and practices that serve as the reason for delay." *Nio v. DHS*, 323 F.R.D. 28, 32 n.2 (2017).

Count V (Due Process) also turns on a common issue—whether the government violates due process when it disregards regulations designed to safeguard protected interests. *See* Stay & PI Mem. 28–29 (arguing that it does); Opp'n to Stay and Prelim. Inj. 33–34, Dkt. No. 17 (disputing this); Stay & PI Reply 21. Because Plaintiffs seek "that due process required by the regulations," *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)—and do not merely seek "additional" procedural safeguards—the government's arguments based on the *Mathews v. Eldridge* balancing framework are misplaced. Opp'n 25; *see also Gutierrez v. Noem*, No. 25-cv-1766, 2025 WL 3496390, at *8 (D.D.C. Dec. 5, 2025) (rejecting government's suggestion that due process claims are generally inappropriate for class-wide resolution).

Turning from the general to the specific, the government argues that the due process claim does not present a common question because some class members—those who have been paroled into the United States—lack a liberty interest. Opp'n 24–25. Even if that were correct (and it is not), federal regulations would still give those class members a "legitimate claim of entitlement" to an individualized decision on the merits of their applications. Stay & PI Mem. 28, 30–31 (quoting *Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)); Stay & PI Reply 21 (same). At any rate, any variation in the nature of a class member's protected interests does not destroy commonality, which requires only a "single" common question. *J.D.*, 925 F.3d at 1321; *see* Newberg § 3:20 ("[N]ot *all* questions of law and fact need be common to the class.").

The government also appears to suggest that a noncitizen can challenge procedural deficiencies only in his or her proceeding before the immigration courts and lacks any due process

17

rights with respect to an application before USCIS. Opp'n 26. The government does not cite a single case to support that proposition, *see id.*, and many cases have held to the contrary. Stay & PI Reply 21; *see*, *e.g., Sonora-Abrajan*, 2026 WL 1354207, at *7 (holding that ICE violated T visa applicant's due process rights when it prevented her from submitting her biometrics); *S.N.C. v. Sessions*, No. 18-cv-7680, 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 26, 2018) (applicant had due process right to "meaningful determination on his T visa application"); *Jimenez v. Nielsen*, 334 F. Supp. 3d 370, 386–87 (D. Mass. 2018). If the government's argument had any traction, though, the issue of whether applicants have due process rights with respect to applications before USCIS would constitute yet another common issue that cuts across class members' due process claims.

**D.  The inclusion of class members ineligible for benefits does not defeat commonality**

Finally, the government argues that the claims do not present common questions because not all class members are eligible for the relief they seek. Opp'n 21–22. This is a problem, says the government, because each class member must "'fac[e] actual or imminent harm' from the Policy" to warrant class certification. *Id.* (quoting *RAICES*, 174 F.4th at 114). As already explained, the D.C. Circuit has rejected that premise: A policy need not threaten harm to each class member to justify Rule 23(b)(2) class certification. *RAICES*, 174 F.4th at 114–15.

Nor does ineligibility negate the common questions that unite all class members' claims. Even if a person might ultimately be ineligible for relief, that does not mean DHS may refuse to adjudicate their eligibility in the first place. *See id.* at 109 ("[E]ven though the INA prohibits ineligible individuals from receiving asylum, it leaves intact their right to apply for asylum in the first place."); *cf. INS v. St. Cyr*, 533 U.S. 289, 308 (2001) (noting that a statute may create "a right to a ruling on an applicant's eligibility"). And the government does not suggest that the Court could find the policy was "reasonably explained" with respect to ineligible applicants but not with

18

respect to eligible applicants. *Ohio*, 603 U.S. at 292. Nor could it. Neither the biometrics regulation nor the policies at issue distinguish between eligible and ineligible applicants. *See* 8 C.F.R. § 1003.47(d). Indeed, DHS collects biometrics in part to determine whether "the person is eligible for the benefit sought." Opp'n 6 (quoting Dkt. No. 17-5). Therefore, the inclusion of potentially ineligible applicants in the class does not undermine certification.[8]

### III.    Plaintiffs' claims are typical of the Class's claims

"The test for typicality is not demanding," Newberg § 3:29: It requires only a "sufficient nexus" between the Plaintiffs' claims and those of the Class. *D.L. v. District of Columbia*, 860 F.3d 713, 725 (D.C. Cir. 2017). Plaintiffs easily meet that standard here. Their claims "stem from a single event or a unitary course of conduct"—the challenged policies—and "are based on the same legal or remedial theory" as the Class's claims, *J.D.*, 925 F.3d at 132: that the policies are arbitrary and capricious, contrary to law, and must be declared unlawful and set aside.

In arguing otherwise, the government points to a few threshold arguments it suggests are unique to the Plaintiffs. First, it says that Plaintiffs' claims are not "ripe" because USCIS has not yet denied their applications. Opp'n 27. But this does not make Plaintiffs' claims unripe, *see* Stay & PI Reply 9, and it certainly does not make Plaintiffs atypical class members. The Class includes only people who (like Plaintiffs) are or will be detained and have or will have a "pending" application before USCIS. Mot. for Class Cert. 1. If USCIS denies an application, it is no longer "pending." *Id.* In that case, the applicant is no longer a member of the class unless they plan to

---

[8] If class members' ineligibility posed an obstacle to class certification, the Court could simply limit the Class to applicants who are eligible for the relief they seek. Contrary to the government's contention, this would not "necessitate an individualized inquiry into eligibility" to determine whether the Class is entitled to prospective relief, Opp'n 22, because all Class members would (by definition) be eligible for relief. *See RAICES*, 174 F.4th at 113–14 (affirming certification of class limited to applicants who were not ineligible for relief).

renew their application. For the class members in that position, the denial of their applications would not materially change their legal theory: The class member would still need DHS to take their biometrics to process their renewed applications, the challenged policy would still stand in their way, and the claim against it would rest on the same arguments that Plaintiffs present here.

Second, the government argues that Plaintiffs Estrada Trejo and H.A. have claims subject to "unique" "jurisdictional defenses" that apply only to § 1255 adjustment applications and derivative asylum petitions. Opp'n 28. That makes no difference. "Unique defenses only defeat typicality when they threaten to skew the focus of the litigation and create a danger that absent class members will suffer because their representative is preoccupied with defenses unique to it." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 150 (D.D.C. 2014); *see* Newberg § 3:45 ("Only if the unique defense is likely to be a 'major focus' of the litigation may the proposed representative's claims be rendered atypical."). And a defense that "presents a question of law," as the government's jurisdictional arguments do, "can readily be resolved by the court without skewing the focus of the litigation." Newberg § 3:45.

Third, the government rehashes its argument that Plaintiffs M.C. and H.A. do not have a "legal injury" because they can pursue a U visa (for M.C.) and derivative asylum (for H.A.) from abroad. Opp'n 28–29. But both still face the common injury to which the challenged policy exposes the rest of the Class: Because DHS will not take their biometrics, their applications cannot proceed while in detention. *See Dorcas Int'l Inst. of Rhode Island v. USCIS*, No. 26-cv-132, 2026 WL 1622708, at *26 (D.R.I. June 5, 2026) ("[W]here an agency suspension of activity 'prevent[s] [an individual] from moving forward,' such that they are 'trapped without recourse due to the indefinite postponement of agency action,' that can be enough to impose significant legal and practical consequences on the individual." (quoting *Connecticut v. U.S. Dep't of the Interior*, 363

20

F. Supp. 3d 45, 59–60 (D.D.C. 2019)); *accord id.* at *33–34. And like other class members, they both face deportation without an adjudication by USCIS that could avoid that result. Even if removal would not make them ineligible for relief, it is still an injury. *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 20 (D.D.C. 2020); *see also Dorcas Int'l Inst.*, 2026 WL 1622708, at *33 ("[T]he mere fear of immigration detention and deportation may alone constitute . . . injury." (quoting *Saghafi v. Edlow*, No. 26-cv-100, 2026 WL 1127468, at *11 (D. Md. Apr. 24, 2026)).

As the government notes, M.C. would also face a bar to readmission for many years if removed. Opp'n 29. But that does not make M.C.'s claim atypical. *Contra id.* at 29. A multi-year bar to readmission is by no means unique to people who are removed a second time: Even a first-time removal triggers a 5 or 10-year bar. 8 U.S.C. § 1182(a)(9)(A)(i)–(ii).

Fourth, the government argues that H.A.'s claims are moot because a district court ordered him released from immigration detention. Opp'n 29–30. But "plaintiffs with moot claims may adequately represent a class." Mem. in Supp. of Class. Cert. 13 n.4 (quoting *J.D.*, 925 F.3d at 1313); *see D.L.*, 860 F.3d at 726 (finding that six plaintiffs were typical and adequate class representatives even though plaintiffs' individual claims were moot). The government does not engage with this principle or explain why mootness would nonetheless defeat typicality here. H.A. still challenges "the same allegedly unlawful conduct" as the rest of the Class, *N.S. v. Hughes*, 335 F.R.D. 337, 354 (D.D.C. 2020), and, if re-detained, he will still be unable to submit his biometrics. Accordingly, he has a continued incentive to challenge the policy. *Contra* Opp'n 30.

Finally, the government's suggestion that Plaintiffs "have not shown that USCIS has not 'accepted' their biometrics" lacks merit. Opp'n 27. The government admits that M.C. and J.Z. both "assert that their biometrics were submitted by ICE but were either not received or not accepted by USCIS," and Y.P. testified that ICE "declined to transport him to a biometrics appointment

despite a request to do so." *Id.* All the other Plaintiffs testify that USCIS scheduled biometrics appointments, but they could not attend because they were detained by ICE. R.M. Decl. ¶¶ 2, 9, Dkt. No. 14-6; Estrada Trejo Decl. ¶¶ 4–5, Dkt. No. 14-7; H.A. Decl. ¶ 6, Dkt. No. 14-9. The government presents no evidence that USCIS has accepted any of the Plaintiffs' biometrics. Instead, it notes that some plaintiffs do not "specifically claim to have asked ICE to facilitate their biometrics collection or that their biometrics were submitted to USCIS and not accepted." Opp'n 28. But the Class definition does not require such a specific request or rejection.

Plaintiffs' claims are therefore typical of the Class's.

### IV.    Plaintiffs are adequate class representatives

Plaintiffs are also adequate class representatives. The government points to no "antagonistic or conflicting interests" between the Plaintiffs and the Class and identifies no reason why Plaintiffs would not "vigorously prosecute the interests of the class through qualified counsel." *J.D.*, 925 F.3d at 1312. As to adequacy, the government just reiterates its arguments on the other elements—that Plaintiffs' claims "are not typical" and "lack commonality." Opp'n 30. For the reasons explained above, those objections are meritless. Plaintiffs' claims satisfy Rule 23(a).

### V.    The challenged policy or policies apply generally to the Class

Finally, Plaintiffs satisfy Rule 23(b)(2): DHS's challenged action is "generally applicable to the class," and Plaintiffs "seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Escobar Molina*, 811 F. Supp. 3d at 61.

To resist that conclusion, the government first argues that declaring the Biometrics Policy unlawful, or vacating it, will not redress class members' injuries "[b]ecause the Biometrics Policy does not preclude DHS's collection or acceptance of Biometrics." Opp'n 32. As explained above,

however, the policy *does* prohibit DHS from taking biometrics from detained applicants for relief from USCIS. *See supra* 7; Stay & PI Reply 6; Release 1, Dkt. No. 14-2 (DHS generally "will" not collect biometrics for detained USCIS applicants); *Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 946 (D.C. Cir. 1987) (use of word "'will' indicates [a] statement is in fact a binding norm").

But even if the policy comprised only the two provisions the government acknowledges— prohibiting USCIS from going to detention centers to collect biometrics and permitting ICE to refuse to collect them—vacating those provisions would still "provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 362. If the court vacates the first provision, it would authorize USCIS to collect class members' biometrics by going to detention centers if necessary. *See* Opp'n 8 (showing that the December 5, 2025, update added the underlined language prohibiting USCIS officers from taking biometrics in DHS facilities: "USCIS officers and contract staff therefore do not travel to jails, prisons, or similar non-DHS *or DHS* detention facilities to perform biometric collections for any detained . . . persons"). If the Court vacates the second provision, it would require ICE to collect class members' biometrics. *See* USCIS, *Policy Manual*, vol. 1, pt. C, Ch. 2 (Nov. 27, 2025) at 4, Dkt. No. 14-11 (noting that prior intradepartmental argument required ICE to conduct securities checks); Policy Alert 1–2, Dkt. No. 14-3 (noting that prior policy "place[d] the burden on ICE to collect biometrics of [noncitizens] in custody"). Policy Alert 1–2, Dkt. No. 14-3; *accord* Opp'n 34 (admitting that under prior policy, "ICE was responsible for collecting biometrics of detained applicants in DHS facilities with applications pending with USCIS").

Each of those remedies would remove an "absolute barrier" to relief, *Duberry v. District of Columbia*, 924 F.3d 570, 583 (D.C. Cir. 2019), and increase the likelihood that DHS will process class members' biometrics and adjudicate the merits of their applications, *see Women's Equity Action League v. Cavazos*, 879 F.2d 880, 886 (D.C. Cir. 1989) ("To establish standing, precedent

23

confirms, a plaintiff need not show sure gain should he win in court; an enhanced probability of gain suffices."). Vacatur or a declaratory judgment would therefore provide redress to each class member even if the government "might eventually find another reason" to deny them the ultimate immigration relief they seek. *Gutierrez v. Saenz*, 606 U.S. 305, 320 (2025); *see NTCH, Inc. v. FCC,* 841 F.3d 497, 506 (D.C. Cir. 2016) ("[S]tanding is not defeated by the possibility that an agency might ultimately wield its discretion in a way that does not fix a party's alleged injury."); *see also Brown v. District of Columbia*, 928 F.3d 1070, 1082 (D.C. Cir. 2019) ("If a certain outcome is legally mandated and an injunction provides each member of the class an increased opportunity to achieve that outcome, Rule 23(b)(2) is satisfied.").

The government next argues that the requested injunction is "improper" because it would prevent DHS from "ever" refusing to collect class members' biometrics, even when the applicant is "ineligible" for relief. Opp'n 32 & n.12. But that is just what the prior policy did: It "place[d] the burden on ICE to collect [class members'] biometrics," period. Policy Alert 1, Dkt. No. 14-3. Indeed, the government does not dispute that 8 C.F.R. § 1003.47(d) imposes a similar duty at least with respect to applications within EOIR's jurisdiction. *See* Opp'n to Stay and Prelim. Inj. 17, Dkt. No. 17. That obligation is not limited to eligible applicants, because DHS often needs to collect a class member's biometrics to determine whether they are eligible for relief in the first place. *See* Opp'n 6 (quoting Dkt. No. 17-5). If DHS could decline a biometrics collection to anyone who has not shown their eligibility, it would put even eligible applicants in an impermissible Catch-22: many would need to submit biometrics to prove their eligibility, but DHS would not take their

24

biometrics unless they could show they were eligible. The requested injunction would thus be needed to provide complete relief to the Class even if it comprised only eligible applicants.[9]

The requested injunction is also "indivisible." *Wal-Mart*, 564 U.S. at 362. Just as DHS did not need to promulgate many different policies to require ICE to collect detained people's biometrics, the Court need not tailor a "*different* injunction" to each individual class member here. *Id.* at 360. Contrary to the government's suggestion (Opp'n 33), one injunction does not become many when it requires or prohibits the same conduct in many cases. *See, e.g.*, *J.D.*, 925 F.3d at 1306 (injunction prohibiting agency from "interfering with or obstructing any class member's access to . . . an abortion" satisfied Rule 23(b)(2)); *Brown*, 928 F.3d at 1082–83 (injunction satisfied Rule 23(b)(2) even though it required defendant to provide individualized assistance to each class member); *Escobar Molina*, 811 F. Supp. 3d at 61, 65 (request for injunction prohibiting DHS from arresting class members without individualized probable cause determinations satisfied Rule 23(b)(2)). Because the challenged policies are "generally applicable to the class," Plaintiffs' requests to set them aside necessarily satisfy Rule 23(b)(2). *J.D.*, 925 F.3d at 1315.

## CONCLUSION

The Court should grant the motion for class certification.

---

[9] This does not mean that DHS would need to take biometrics for *every* detained person who applies for relief from USCIS. The requested injunction would only require DHS to collect class members' biometrics "to the extent required for a decision on the merits of their applications." Compl. 29. If the face of the application makes clear the person is ineligible for relief, a biometrics collection would not be necessary to adjudicate the application on the merits.

Dated: June 17, 2026

Respectfully submitted,

*/s/ Sean Ouellette*
Sean Ouellette (DC Bar 1741535)
Alethea Anne Swift (DC Bar No. 1644929)
Jennie L. Kneedler (DC Bar No. 500261)
Paul R.Q. Wolfson (DC Bar No. 414759)
Elena Goldstein (DC Bar No. 90034087)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
Phone: (202) 322-1959
souellette@democracyforward.org
jkneedler@democracyforward.org
aswift@democracyforward.org
pwolfson@democracyforward.org
egoldstein@democracyforward.org

Mary Georgevich
Keren Zwick (D.D.C. Bar No. IL0055)
Richard Caldarone (DC Bar No. 989575)
Gerardo Romo
Nicole May
**NATIONAL IMMIGRANT JUSTICE CENTER**
111 W. Jackson Blvd. Suite 800
Chicago, IL 60604
Phone: (312) 660-1364 (Zwick)
mgeorgevich@immigrantjustice.org
kzwick@immigrantjustice.org
rcaldarone@immigrantjustice.org
gromo@immigrantjustice.org
nmay@immigrantjustice.org

Michelle N. Mendez
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: 410-929-4720
michelle@nipnlg.org

*Counsel for Plaintiffs*

26